## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

MIDASHA S.,

           Plaintiff,

   v.               5:22-CV-1006
                    (BKS/ATB)

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

HOWARD D. OLINSKY, ESQ., for Plaintiff
FERGUS KAISER, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

### REPORT-RECOMMENDATION

Plaintiff commenced this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security, denying her applications for benefits.  Plaintiff did not consent to the jurisdiction of a Magistrate Judge (Dkt. No. 7), and this matter was therefore referred to me for Report and Recommendation by Chief United States District Court Judge Brenda K. Sannes, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).  Both parties filed briefs, which the court treats as motions under Federal Rule of Civil Procedure Rule 12(c) in accordance with General Order 18.

### I. PROCEDURAL HISTORY

On June 13, 2019, plaintiff filed an application for Disability Insurance Benefits ("DIB") alleging disability beginning December 31, 2018.  (Administrative Transcript ("T.") 72, 331-37).  On February 10, 2020, plaintiff filed an application for Supplemental Security Income ("SSI"), alleging disability as of the same date.  (T. 103,

338-45).  Plaintiff's applications were denied initially on September 18, 2019, and again

on reconsideration on September 11, 2020.  (T. 72-125).  Plaintiff subsequently

requested and appeared for various hearings before Administrative Law Judge ("ALJ")

Elizabeth Koennecke on June 8, 2021, September 27, 2021, and April 4, 2022.  (T. 53-

67, 38-52, 70-71).  In addition to plaintiff's testimony, the ALJ took testimony from

Vocational Expert ("VE") Elizabeth Pasikowski. (T. 38-52).  ALJ Koennecke issued an

unfavorable decision on April 21, 2022, finding that plaintiff was not disabled.  (T. 11-

25).  This decision became final when the Appeals Council denied plaintiff's request for

administrative review.  (T. 1-5).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standards

To be considered disabled, an individual who is 18 years old or older seeking

DIB or Supplemental Security Income benefits must establish that he or she is "unable

to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than twelve months .

. . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but cannot,
> considering his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the immediate area
> in which he lives, or whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections

404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at

448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   <u>THE ALJ'S DECISION</u>

The ALJ first determined that plaintiff met the insured status requirements for DIB through March 31, 2024. (T. 14). The ALJ then found, at step two of the sequential evaluation, that plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 31, 2018. (*Id.*). Next, the ALJ found that plaintiff has the following severe impairments in combination: left brachial plexoplasty and "all mental diagnoses as variously characterized." (*Id.*). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 16).

4

At step four, the ALJ found that plaintiff had the residual functional capacity ("RFC") for light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except

> no lifting, carrying, pushing, and pulling with the left non-dominant upper extremity. No overhead reaching with the non-dominant hand. Occasional front/lateral reaching with the non-dominant hand. Occasional handling/fingering with the non-dominant hand. The claimant retains the ability to: understand and follow simple instructions and directions; perform simple tasks independently; maintain attention and concentration for simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with all others to the extent necessary to carry out simple tasks; handle simple, repetitive work-related stress in that the claimant can make occasional decision directly related to the performance of simple tasks in a position with consistent job duties that does not require the claimant to supervise or manage the work of others.

(T. 18). In making the RFC determination, the ALJ stated that she considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. [§§] 404.1529 and 416.929" and Social Security Ruling ("SSR") 16-3p. (T. 18). The ALJ further noted that she considered "the medical opinion(s) and prior administrative medical finding(s)" in accordance with the requirements of 20 C.F.R. §§ 404.1520c and 416.920c. (*Id.*). After considering plaintiff's statements regarding her symptoms, along with the other evidence of record, the ALJ concluded the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.*). The ALJ then determined that, considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the plaintiff could perform. (T. 24).

Accordingly, the ALJ ruled that plaintiff was not disabled from the alleged onset date of December 31, 2018, through the date of the ALJ's decision.  (*Id.*).

## IV.    ISSUES IN CONTENTION

Plaintiff raises two arguments challenging the ALJ's decision:

1.    The ALJ failed to properly evaluate the opinion of plaintiff's treating therapist, P-LMFT Isabella Geraghty (Plaintiff's Brief ("Pl.'s Br.") at 9-22) (Dkt. No. 10).

2.    The ALJ failed to properly evaluate plaintiff's subjective complaints. (Pl.'s Br. at 22-25).

Defendant contends that the Commissioner's determination should be affirmed because it was supported by substantial evidence.  (Defendant's Brief ("Def.'s Br.") at 6-15) (Dkt. No. 15).  For the reasons stated below, this court agrees with the defendant and finds the ALJ's decision was supported by substantial evidence.

## DISCUSSION

## V.    RFC/EVALUATING MEDICAL EVIDENCE/EVALUATION OF SYMPTOMS

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-

6

00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff can perform and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    Evaluation of Medical Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the

Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions."  *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.  An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1).  The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior

8

administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### 3.    Evaluation of Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ must "'carefully consider'" all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of the term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term. SSR 16-3p, 81 FR at 14167. Instead, symptom evaluation tracks the language of the

regulations.[1]  The evaluation of symptoms involves a two-step process.  First, the ALJ

must determine, based upon the objective medical evidence, whether the medical

impairments "could reasonably be expected to produce the pain or other symptoms

alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the

claimant's] alleged functional limitations and restrictions due to pain or other symptoms

can reasonably be accepted as consistent with the [objective medical evidence] and

other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'"

*Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter alia 20 C.F.R. §

404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).[2]  If the objective

medical evidence does not substantiate the claimant's symptoms, the ALJ must consider

the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing

superceded SSR 96-7p).  The ALJ must assess the claimant's subjective complaints by

considering the record in light of the following symptom-related factors: (1) claimant's

daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms;

(3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side

effects of any medication taken to relieve symptoms; (5) other treatment received to

relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7)

---

[1] The standard for evaluating subjective symptoms has not changed in the regulations.  Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear that the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character." 81 FR at 14167.  The court will remain consistent with the terms as used by the Commissioner.

[2] The court in *Barry* also cited SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996) which was superceded by SSR 16-3p.  As stated above, the factors considered are the same under both rulings.  The 2016 ruling has removed the emphasis on "credibility."

any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination. *Cichocki v. Astrue*, 534 F. App'x at 76.  However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. *Id. See also Del Carmen Fernandez v. Berryhill*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)).  "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

### B.    Analysis

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence, and is the product of legal error, because she failed to properly evaluate the opinion of P-LMFT[1] Geraghty. (Pl.'s Br. at 9-22).  Specifically, plaintiff contends that the ALJ's articulated reasons for rejecting Ms. Geraghty's opinion constituted "mischaracterizations of the evidence," and were otherwise not supported by substantial evidence. (*Id.*).

On March 5, 2021, Ms. Geraghty prepared a medical source statement ("MSS") with respect to plaintiff's mental impairments.  (T. 1170-74)  In the MSS, Ms. Geraghty identified plaintiff's diagnosis for "major depression," and represented that she had conducted psychotherapy sessions with plaintiff once a week since August

---

[1] Licensed Marriage and Family Therapists ("LMFT"s) are certified to practice through the New York State Education Department.  *See* https://www.op.nysed.gov/professions/marriage-and-family-therapists/license-requirements.  It is unclear from the record whether, as  "P-LMFT," Ms. Geraghty held a "provisional" license as a marriage and family therapist, or otherwise.  According to information provided by the state's database, Ms. Geraghty has held her LMFT license since September 26, 2022.  *See* https://www.op.nysed.gov/verification-search.

2020.  (T. 1170). After identifying various signs and symptoms exhibited by plaintiff, including difficulty thinking or concentrating and memory impairment, Ms. Geraghty provided her opinion, based on her examination, of how plaintiff's mental and emotional capabilities were affected by plaintiff's impairments.  (T. 1171). Specifically, Ms. Geraghty opined that plaintiff was unable to meet competitive standards, or had no useful ability to function, in seventeen out of the twenty-one listed mental abilities and aptitudes required perform particular types of jobs.  (*Id.*).  When asked to explain her restrictive limitations, Ms. Geraghty stated that plaintiff's current limitations were due to her "mental health struggling at this time to support work functions," as "evidenced through high levels of stress, struggles with sleep, confrontation issues, and distractibility." (*Id.*).

Ms. Geraghty also indicated in the MSS that plaintiff's psychiatric condition caused stomach pain and chest tightening.  (T. 1172).  She remarked that plaintiff had "repeated episodes of deterioration or decompensation in work or work-like settings which caused [plaintiff] to withdraw from the situation or experience exacerbation of signs and symptoms (including deterioration of adaptive functioning)."  (*Id.*).  Ms. Geraghty indicated that plaintiff had "deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner," and opined that plaintiff's impairments would be likely to produce "good" and "bad" days; cause her to be off-task for more than 20% of the time during an eight-hour workday; and cause her to be absent from work more than four days per month.  (*Id.*).  Finally, Ms. Geraghty indicated that plaintiff's limitations of function had "existed and persisted" to the same degree since at least December 31, 2018, plaintiff's alleged onset date.  (T. 1173).  In support of her finding in this regard, Ms. Geraghty explained that plaintiff had "reported struggles

with mental health symptoms since 2014-2015 due to deaths in the family and taking on a lot of the stress for the family."  (*Id.*).

The ALJ explicitly considered Ms. Geraghty's MSS in her written decision.  (T. 20).  After recognizing that Ms. Geraghty was one of plaintiff's treating providers, the ALJ stated that she was "not very persuaded" by the therapist's opinion, "because the significant restrictions identified are not supported by the objective evidence in record." (*Id.*).  The ALJ provided the following additional explanations for concluding that the opinion lacked persuasion:

(1)   Ms. Geraghty's treatment notes lacked objective clinical findings, and "simply reflect[ed] the [plaintiff's] statements of psychological symptoms[;]"

(2)   Ms. Geraghty's treatment notes indicated that plaintiff was "responding well to treatment" and was "actively seeking competitive employment[;]"

(3)   Ms. Geraghty's treatment notes indicated that plaintiff had not reported any suicidal ideations;

(4)   Normal findings were noted in plaintiff's mental status examinations throughout the record;

(5)   Plaintiff represented to Ms. Geraghty that her psychological symptoms were improving with treatment; and

(6)   Ms. Geraghty relied significantly on plaintiff's subjective complaints in concluding that plaintiff's limitations had existed since 2014-2015.

(*Id.*).

The ALJ also addressed Ms. Geraghty's opinion as it related to the issue of off-task behavior and absenteeism.  In particular, the ALJ found no objective medical evidence or supporting explanation for Ms. Geraghty's opinion that plaintiff was "struggling."  (T. 20).  The ALJ noted that "there are no indications that [plaintiff] had

13

concentration deficits, and medical records noted that she arrived a few minutes prior to her scheduled appointment." (*Id.*). In addition, the ALJ found plaintiff's statements that she got along with friends and family, and the consultative examiner's observation that plaintiff was "cooperative," to contradict the social restrictions opined by Ms. Geraghty. (*Id.*). Last, the ALJ took into consideration plaintiff's lack of psychiatric hospitalizations. (*Id.*).

Notwithstanding the ALJ's conclusion that Ms. Geraghty's restrictive opinions were not supported by the objective evidence in the record, she specifically included mental limitations in the RFC to reflect what evidence she did find of plaintiff's inability to perform detailed or complex tasks "due to the combination of [plaintiff's] non-severe mental disorder,[2] the physical effects of pain, and any potential cognitive side-effects of the medications." (T. 18, 20). The ALJ also found it appropriate, based on the record evidence, to limit plaintiff from job duties that require supervision or management over the work of others. (T. 18).

In challenging the ALJ's evaluation of Ms. Geraghty's opinion, plaintiff first contends that the ALJ's assessment of the supportability factor was flawed and constituted error warranting remand. As previously discussed, "supportability, under the new regulations, has to do with the fit between the medical opinion offered by the source and the underlying evidence and explanations 'presented' by that source to support her opinion." *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630, 2020

---

[2] The ALJ's reference to plaintiff's "non-severe mental disorder" is at odds with her step two determination that plaintiff's mental diagnoses, as variously characterized, constituted a severe impairment. (T. 20). The parties have not raised this apparent typographical error in their briefs, however, and this issue does not impact the court's ultimate recommendation to uphold the Commissioner's decision.

WL 8167136, at *16 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted*,

2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (internal quotations and citations omitted).

"[T]he strength of a medical opinion increases as the relevance of the objective medical

evidence and explanations presented by the medical source increase." *Rosario v.*

*Comm'r of Soc. Sec.,* No. 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18,

2022) (quoting *Vellone v. Saul,* No. 1:20-CV-00261, 2021 WL 319354, at *6 (S.D.N.Y.

Jan. 29, 2021), *report and recommendation adopted*, 2021 WL 2801138 (S.D.N.Y. July

6, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1))).

　　In this case, the ALJ did not explicitly discuss the limited explanation provided

by Ms. Geraghty in support of her restrictive limitations, nor did she specifically point

to what, if any, objective evidence Ms. Geraghty relied on in reaching her opinion.

Nevertheless, to the extent the ALJ analyzed Ms. Geraghty's underlying treatment

records against her own opinion, and found incongruity, at least one other court in this

Circuit has found this analysis sufficient to satisfy the supportability factor. *See*

*Rosario,* 2022 WL 819810, at *10 ("[B]y analyzing Ms. Rubino's underlying treatment

records against her opinion, and finding an incongruity, the ALJ's analysis satisfies the

supportability factor."), *see also Diaz v. Kijakazi,* No. 20-CV-10346, 2022 WL

4352470, at *12 (S.D.N.Y. Sept. 20, 2022).  For example, the ALJ considered that Ms.

Geraghty failed to provide any supporting, objective clinical findings, such as the

results of mental status examinations, in finding the opinion not very persuasive.  This

was not an inappropriate consideration for the ALJ to make when assessing the

supportability of Ms. Geraghty's opinion.  *See James B. v. Comm'r of Soc. Sec.*, No.

1:20-CV-01075, 2021 WL 5988411, at *5 (W.D.N.Y. Dec. 16, 2021) (a lack of objective evidence is not "wholly irrelevant" to assessing the persuasiveness of a medical opinion, even if unnecessary to establish the condition itself).  Moreover, in this case the ALJ's assessment of the supportability of Ms. Geraghty's opinion was not based solely on a lack of objective findings "presented" by Ms. Geraghty.  The ALJ also noted that Ms. Geraghty represented that plaintiff appeared to be responding well to treatment, and that plaintiff did not report any suicidal ideations.  It was not improper for the ALJ to consider how these findings by Ms. Geraghty presented a disconnect with her opined mental limitations.

Based on the arguments presented in plaintiff's brief, her challenge appears to be less that the ALJ failed to address the supportability factor in her analysis, and more so her dispute with the ALJ's conclusions regarding the supportability of Ms. Geraghty's opinion.  The court, however, will not endeavor to impermissibly reweight the evidence considered by the ALJ where her analysis does not lack substantial supporting evidence, or otherwise constitute legal error.  *See, e.g., Domenica Alberta S. v. Comm'r of Soc. Sec.,* No. 6:21-CV-379, 2022 WL 4591873, at *3 (N.D.N.Y. Sept. 30, 2022) ("Plaintiff's argument that [the court] improperly considered the supportability of Dr. Chung's opinion is, as the Commissioner argues, essentially a request to reweigh the evidence considered by the ALJ.").  To the extent the aforementioned considerations constituted the ALJ's assessment of the supportability of Ms. Geraghty's opinion, the court finds no error warranting remand.

16

The plaintiff's argument that the "evidence of record . . . demonstrates the existence of objective findings that would demonstrate consistency with [Ms. Geraghty's] opinion" also misses the mark.  It is well settled that, if supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)) (other citations omitted). In other words, this court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

To this end, consistency "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to them." *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502, 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted*, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022).  An ALJ is "expressly authorized-indeed, required-to consider whether [a physician's] opinion [is] consistent with the entire record." *DuBois v. Comm'r of Soc. Sec.*, No. 20-CV-8422, 2022 WL 845751, at *8 (S.D.N.Y. Mar. 21, 2022) (internal quotations omitted). Consideration of the entire record entails weighing "all of the evidence available." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

Here, in assessing the consistency of Ms. Geraghty's opinion with the available evidence, the ALJ noted that the rather extreme limitations opined by the therapist were not supported by the mental examinations throughout the record, documenting largely unremarkable findings.  (T. 20, 22). For example, the ALJ considered that, although consultative examiner Dr. Noia observed that plaintiff's affect was constricted and that she appeared "sad and slightly tearful," he found that her motor behavior was normal, eye contact was appropriate, and that her thought processes were coherent and goal directed with no evidence of disordered thinking.  (T. 834-35).  Dr. Noia further observed that plaintiff's attention and concentration were intact, and that her recent and remote memory skills were only mildly impaired.  (T. 835).  He also noted that her insight and judgment were "good."  (*Id.*).

The opinions of Dr. Deneen, following a consultative mental examination of plaintiff, differed slightly from those of Dr. Noia.  However, to the extent that Dr. Dineen opined that plaintiff's mental impairments caused, at most, moderate limitations in regulating emotions, controlling behavior, and maintaining well-being, these limitations were still inconsistent with the work-preclusive limitations opined by Ms. Geraghty.  (T. 935).  Dr. Deneen specifically noted that the results of his examination did "not appear significant enough to interfere with the [plaintiff's] ability to function on a daily basis," and found that her prognosis was fair given, among other things, her "capacity to maintain continuous employment."  (T. 938).  Furthermore, the ALJ noted Dr. Deneen's observation that several of the noted impairments were due to plaintiff's "deliberate suboptimal effort" during the examination, suggesting that the limitations

18

assessed in those capacities were not an accurate reflection of plaintiff's functioning. (T. 19-20, 937-38).

The ALJ also properly considered the lack of consistency between Ms. Geraghty's opinion and the longitudinal treatment record as a whole. According to the medical evidence of record, plaintiff reported to her primary care physician in November 2018 that she had been talking Zoloft prenatally, and wished to restart the medication now that she was no longer pregnant. (T. 517). Plaintiff was referred to mental health counseling at that time, which she refused. (T. 519). In December 2018, plaintiff reported that she was "stable" with Zoloft, and wished to establish care with a mental health counselor. (T. 515). Her primary care provider noted plaintiff's "normal" findings upon psychiatric examination. (*Id.*). [3]

Plaintiff did not return to her primary care provider until August 28, 2019, at which time she reported that she "thinks the Zoloft is working," and requested another referral for mental health services. (T. 887). At that appointment, the results of plaintiff's GAD-7 questionnaire indicated "severe" anxiety. Her provider prescribed Lamictal and noted that plaintiff's "biggest problem at this point is irritability." (T. 896). Plaintiff reported some improvement in her anxiety symptoms a month later; however it appears that she continued to decline mental health counseling. (T. 877, 885).

---

[3] Plaintiff fell in the shower in December 2018, precipitating her left arm condition. (T. 767). Plaintiff followed up with orthopedic, physical therapy, and pain management care until her shoulder surgery on June 14, 2019. (T. 641, 717, 723, 731, 750, 761, 1114, 1209-1273).

Plaintiff was noted to begin sleep apnea treatment in October 2019, which her primary care provider suspected "may also help" her mood and stress management. (T. 874). She exhibited normal mental findings upon examination at her medical appointments throughout 2019. (T. 863, 867, 874, 884, 990, 1050). In December 2019, plaintiff's responses to a PHQ-9 questionnaire indicated "severe depression"; however her primary care provider documented "normal" findings upon psychiatric examination. (T. 987, 990). Her provider surmised that "a lot of her problems stem from her sleep apnea[.]" (T. 991).

On January 22, 2020, plaintiff's primary care provider observed plaintiff to have normal findings upon neurological and psychiatric examination, including normal orientation and memory. (T. 984). At her follow up visit on February 26, 2020, plaintiff reported symptoms including dizziness, difficulty concentrating, memory loss, and continued depression; she requested a referral to neurology. (T. 973, 978). Findings upon psychiatric examination were normal, however. (T. 977). Plaintiff commenced psychotherapy with Ms. Geraghty in August 2020. (T. 1203). Based on the record, it appears that plaintiff subsequently treated with Ms. Geraghty, primarily via telehealth services/Zoom,[4] on the following dates:[5] October 29, 2020 (T. 1196); January 4, 2021 (T. 1189); and March 22, 2021 (T. 1182). In November 2020, plaintiff reported to her

_____

[4] *See* T. 1198 ("Currently, sessions are still occurring via telehealth due to ongoing covid-19 health crisis . . . . Sessions are occurring through zoom as it is [plaintiff's] preferred method.").

[5] It is difficult to discern from the record how often plaintiff actually treated with Ms. Geraghty. Despite Ms. Geraghty's treatment plan indicating that she would contact plaintiff "at least monthly for individual and/or family psychotherapy telehealth sessions" (T. 1193), and her subsequent representation in the MSS that she had conducted psychotherapy sessions with plaintiff once a week since August 2020 (T. 1170), the treatment records before this court only document four psychotherapy sessions between plaintiff and the therapist between August 2020 and March 2021.

20

primary care provider that she was "overall doing well," and had been "working as a teacher which she enjoys." (T. 969). She reported that her psychiatric medications had been "very helpful." (T. 970).

On April 13, 2021, plaintiff was seen for a neurology consultation, due to her complaints of "memory issues, dizzy spells, and headaches." (T. 1276). Upon examination, nurse practitioner ("NP") Gutierrez noted that plaintiff's mood and affect were normal, her memory was grossly intact, and her attention was within normal limits. (T. 1277-78). NP Gutierrez further noted that plaintiff's speech was articulate, her knowledge and vocabulary were consistent with her education, and her thought processes appeared clear and appropriate. (*Id.*).

Plaintiff returned for a follow-up appointment on May 26, 2021, at which time neurologist Dr. Rashid made the same unremarkable observations upon examination. (T. 1414-15). Among other things, Dr. Rashid determined that plaintiff suffered from tension type headaches and cognitive impairment most likely secondary to her anxiety and depression. (T. 1416). Plaintiff was scheduled for a multitude of diagnostic tests. (T. 1384). At plaintiff's neurologic follow-up appointment on August 25, 2021, Dr. Rashid indicated that, among other findings, plaintiff's brain MRI showed no acute intracranial abnormality, and her EEG results were also normal. (T. 1387, 1399). He observed that plaintiff's findings upon examination were unremarkable as to her mental status. (1389).

Plaintiff's primary care provider started her on Lexapro in November 2021 in response to her continued reports of depression, however she exhibited normal

neurological and psychiatric findings upon examination through February 2022.  (T. 1497, 1503, 1510, 1513-18).  Plaintiff also reported that the B12 injections she was receiving were helping with the symptoms stemming from her depression and anxiety, including her mood and her energy. (T. 1493, 1500, 1506).  On February 10, 2022, plaintiff reported improvement in her mood and pain, that she was "doing well," and feeling "very positive" about the progress she was making in counseling.  (T. 1493).

The ALJ explicitly discussed her review of plaintiff's aforementioned treatment history, particularly plaintiff's mental status examinations.  (T. 22).  Upon reviewing the available treatment notes and other opinions of record, the ALJ appropriately concluded that Mr. Geraghty's asserted limitations were not consistent with the objective medical evidence.  *See Knief v. Comm'r of Soc. Sec.*, 20 Civ. 6242, 2021 WL 5449728, at *1–2, 8–9 (S.D.N.Y. Nov. 22, 2021) (affirming ALJ decision which concluded, after evaluating treatment records and mental status examinations that claimant had "meaningful, but not profound, mental restrictions" with chronic anxiety and mood disturbances, treated with regular psychiatric appointments and psychiatric medications).

Nor did the ALJ "cherry pick" the record, as plaintiff argues. "The term 'cherry' picking generally refers to improperly crediting evidence that supports findings while ignoring evidence from the same source." *Sonia N.B.A. v. Kijakazi*, No. 3:21-CV-709, 2022 WL 2827640, at *8 (D. Conn. July 20, 2022) (quoting *Rodriguez v. Colvin*, No. 3:13-CV-1195, 2016 WL 3023972, at *2 (D. Conn. May 25, 2016)).  Here, however, the ALJ did not ignore the restrictive findings of Ms. Geraghty, or any other medical

source of record.  Rather, the ALJ explicitly acknowledged Ms. Geraghty's findings and

explained how those findings affected the persuasiveness of her opinion by comparing

them to the objective medical evidence of record.  Accordingly, the court is not

persuaded by plaintiff's contention that the ALJ improperly cherry-picked evidence in

rejecting Ms. Geraghty's restrictive limitations and reaching the conclusion that

plaintiff retained the ability to perform modified light work.  *See Lisa T. v. Kijakazi*,

No. 3:20-CV-1764, 2022 WL 2207613, at *3 (D. Conn. June 21, 2022) ( "[A]n

allegation of cherry-picking is 'seldom successful because crediting it would require a

court to re-weigh record evidence' " . . . . "Indeed, what a claimant may label as cherry-

picking can often be described 'more neutrally as weighing the evidence.' ") (citations

omitted).

    Plaintiff's final argument is that the ALJ did not properly consider her subjective

complaints.  In particular, plaintiff contends that the ALJ failed to adequately discuss

and consider the factors contemplated by the regulations to support her rejection of

plaintiff's subjective complaints.  In her decision, the ALJ found that plaintiff's

medically determinable impairments could reasonably be expected to cause her alleged

symptoms, but that her statements concerning the intensity, persistence, and limiting

effects of these symptoms were not entirely consistent with the evidence of record.  In

making her determination, the ALJ outlined evidence in the record which she

determined provided some support of plaintiff's allegations.  (T. 18-23).  The ALJ also

discussed the noted effect of plaintiff's medication on her depression, and considered

plaintiff's daily activities.  (*Id.*).  This includes plaintiff's report that she had been

caring for her four children and her grandmother, in addition to working as a teacher at some point during the period of alleged disability.

Plaintiff argues that certain evidence in the record supports greater limitations than those implemented by the ALJ.  However, under the substantial evidence standard of review, it is not enough for plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Substantial evidence "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  A review of the record and the ALJ's decision indicate the ALJ properly assessed plaintiff's subjective complaints, and substantial evidence supported the ALJ's determination.  In particular, the ALJ adequately explained her determination that plaintiff's complaints of disabling symptoms were not consistent with the objective findings of record, plaintiff's daily activities, and plaintiff's course of treatment.  *See Yucekus v. Comm'r of Soc. Sec.*, 829 F. App'x 553, 556 (2d. Cir. 2020) (citing *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (ALJ "is not required to accept the claimant's subjective complaints without question" and reserves the discretion to weigh the credibility of a claimant's testimony against the other record evidence.)).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's motion for judgment on the pleadings (Dkt. Nos. 10, 16) be **DENIED;** and it is further

**RECOMMENDED,** that defendant's motion for judgment on the pleadings (Dkt. No. 15) be **GRANTED**; and it is further

**RECOMMENDED,** that the decision of the Commissioner be **AFFIRMED**, and plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:  July 17, 2023

Andrew T. Baxter
U.S. Magistrate Judge